IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| TABITHA N. WEBB, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| VS. | ) | No. 05-1186-T/An |
| | ) | |
| DAVID L. WOOLFORK, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Tabitha N. Webb, who apparently is not currently a prisoner, filed a *pro se* petition pursuant to 28 U.S.C. § 2254 on July 7, 2005, along with a motion seeking leave to proceed *in forma pauperis*. The Court issued an order on October 7, 2005 denying leave to proceed *in forma pauperis* and directing the petitioner to either pay the habeas filing fee or file an amended affidavit that described with specificity why the $5 habeas filing fee was beyond her means. Webb paid the habeas filing fee on November 4, 2005. The Clerk shall record the respondent as Madison County Sheriff David L. Woolfork.

I.   STATE COURT PROCEDURAL HISTORY

Webb and her mother, Sandra Kay Webb, were convicted following a jury trial in the Madison County Circuit Court on December 7, 2000 of 47 counts of cruelty to animals, in

violation of Tenn. Code Ann. § 39-14-202(a)(2).[1] On that date, the trial court ordered the Webbs not to possess or have custody of animals until further orders of the court and scheduled the sentencing hearing for January 2, 2001. On December 19, 2000, the trial court held a hearing regarding the forfeiture of the dogs that were the subject of the guilty verdicts and ruled that the dogs were forfeited to the Jackson-Madison County Humane Society ("JMCHS") pursuant to Tenn. Code Ann. § 39-14-202(d). The trial court also ruled that the JMCHS would retain custody of the remaining dogs as well. The trial court conducted a sentencing hearing on January 2, 2001, at which time the Webbs were sentenced to concurrent terms of 11 months and 29 days for each count, with incarceration for 60 days and a prohibition from owning animals for 10 years.[2] The Webbs were allowed 90 days, until April 2, 2001, to find new owners for the dogs that had not been the subject of guilty verdicts.

On January 10, 2001, the trial court issued arrest warrants for the Webbs based upon their alleged possession of additional animals at their premises, in violation of the orders of the court. A hearing was held on January 16, 2001, following which the trial court revoked the Webbs' 60-day community correction sentences and ordered that each serve the full

---

[1] The Webbs were charged with 101 counts of animal cruelty. The jury acquitted them on 16 counts and was unable to reach a verdict on 38 counts.

[2] The trial court also imposed fines of $5000 and 50 hours of community service work for each defendant and ordered the Webbs to pay restitution to the JMCHS.

sentences imposed on January 2, 2001.[3] The Tennessee Court of Criminal Appeals affirmed the Webbs' convictions and sentences. State v. Webb, 130 S.W.3d 799 (Tenn. Crim. App. 2003), *perm. app. denied* (Tenn. Dec. 15, 2003).[4]

It does not appear that the Webbs filed petitions pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222. Instead, they filed a collective petition pursuant to 28 U.S.C. § 2254 in this district on February 13, 2004 that was docketed as case no. 04-1026-T/An. The Court issued an order on March 8, 2004 that, *inter alia*, directed the Clerk to open a new case for Tabitha Webb's petition and ordered each of the Webbs to file an *in forma pauperis* affidavit or pay the $5 habeas filing fee within 30 days. Tabitha Webb's petition was docketed as case no. 04-1047-T/An. Because of their failure to submit *in forma pauperis* affidavits or pay the habeas filing fee as directed, the Court issued orders on July 7, 2004 dismissing the petitions of both Tabitha Webb and Sandra Kay Webb without prejudice, pursuant to Fed. R. Civ. P. 41(b), for failure to prosecute.

## II.   PETITIONER'S FEDERAL HABEAS CLAIMS

Although the issues Tabitha Webb seeks to raise are not clearly enumerated, the petition appears to raise the following issues:

---

[3] On April 9, 2001, the trial court entered an order finding that the Webbs had not complied with the April 2 deadline for a disposal plan for the dogs not the subjects of guilty verdicts. Those dogs were ordered forfeited to the JMCHS.

[4] The Tennessee Court of Criminal Appeals remanded for entry of a corrected judgment on one count, where an acquittal was erroneously recorded as a conviction, and for an evidentiary hearing as to the payment of restitution.

3

1. She received ineffective assistance, in violation of the Sixth Amendment, from both trial and appellate counsel;

2. She is the target of selective law enforcement and vindictive prosecution;

3. She was denied a fair trial due to the fact that she was not permitted to view photographic evidence introduced by the State during trial;

4. The trial court should have declared a mistrial because her due process rights were violated;

5. Her conviction was the result of an illegal search executed by the JMCHS and not by law enforcement personnel;

6. The prohibition on owning animals violates her First Amendment right to practice of her religion, Santeria, which requires animal sacrifice;

7. The punishment imposed was cruel and unusual; and

8. Newly discovered evidence proves she was prosecuted with tainted evidence.

### III. ANALYSIS OF THE MERITS

Before addressing the merits of the petition, it is first necessary to consider a preliminary issue. Section 2254(a) authorizes a district court to entertain § 2254 petitions only for persons "in custody pursuant to the judgment of a state court." 28 U.S.C. § 2254(a); see also 28 U.S.C. § 22419c)(3). The "in custody" determination is made at the time the § 2254 petition is filed. E.g., Carafas v. LaVallee, 391 U.S. 234 (1968) (habeas petition is not moot and court is not divested of jurisdiction where petitioner is unconditionally released from custody during pendency of appeal); Sibron v. New York, 392 U.S. 40 (1968); cf. Garlotte v. Fordice, 515 U.S. 39 (1995) (petitioner who is serving consecutive state

sentences is "in custody" and may attack the sentence scheduled to run first, even after it has expired, until all sentences have been served). However, in Maleng v. Cook, 490 U.S. 488, 492 (1989) (per curiam), the Supreme Court rejected the view that:

> a habeas petitioner remains "in custody" under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted.

In so holding, the Supreme Court stressed that, "[w]hile we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to a situation where a habeas petitioner suffers no present restraint from a conviction." Id.

In this case, the petition makes clear that Webb has served her entire sentence. The petition alleges that service of the petitioner's sentence was stayed pending appeal. After the issuance of the mandate on direct appeal, which occurred on February 9, 2004, the Webbs were arrested on February 17, 2004. After serving her sentence, Tabitha Webb was released on October 3, 2004. As Webb's sentence had fully expired by the time she filed her petition, it appears that the "in custody" requirement of 28 U.S.C. § 2254 is not satisfied in this case[5] and, therefore, habeas review of her conviction is unavailable.

Because Webb is still subject to the 10-year ban on owning animals, she presumably would contend that she continues to suffer collateral consequences from her criminal

---

[5] Even if Webb was subject to the possibility of re-incarceration at the time of her release, this petition was filed ten months after her release from incarceration for these misdemeanor offenses. Thus, this is not a case in which a habeas petitioner can satisfy the "in custody" requirement because she was on parole when the petition was filed. See, e.g., Jones v. Cunningham, 371 U.S. 236 (1963).

5

conviction. However, the Supreme Court has stated that, "once the sentence imposed for a conviction has fully expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack on it." Maleng, 490 U.S. at 492. Thus, for example, the Sixth Circuit has held that an individual who was designated a sexual predator more than ten years after his conviction could not challenge that designation in a § 2254 petition because the "in custody" requirement was not satisfied. Leslie v. Randle, 296 F.3d 518 (6th Cir. 2002). In so holding, the Sixth Circuit explained that the sexual predator statute placed no physical constraints on the petitioner's movement. Id. at 522. Moreover, the Sixth Circuit also emphasized the fact that the purpose of the sexual predator statute was to protect the public rather than to impose additional punishment on persons convicted of crimes. Id. at 522-23. For the same reason, the Court concludes that the restriction on owning animals that was imposed in this case is more akin to a collateral consequence, such as loss of the right to vote, than to severe restraints on the loss of freedom of movement such as parole. See id. at 523. The restriction in question has no effect on the petitioner's freedom of movement. Moreover, Tenn. Code Ann. § 39-14-202(d), the statute authorizing the prohibition, clearly states that the purpose of the restriction is "the protection of the animals."

Accordingly, because the "in custody" requirement of 28 U.S.C. § 2254(a) has not been satisfied, habeas relief is not available to Webb.

Although the lack of subject-matter jurisdiction over the petition is more than

6

sufficient to warrant a *sua sponte* dismissal of the petition, the Court will briefly address several additional issues to make clear why dismissal of this petition is appropriate without affording the petitioner the opportunity to respond. Thus, the next issue to consider is the timeliness of this petition. Twenty-eight U.S.C. § 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall begin to run from the latest of—

  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and

  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Application of these provisions in this case is straightforward. State convictions ordinarily become "final" within the meaning of § 2244(d)(1)(A) at the expiration of the

time for filing a petition for a writ of certiorari from a decision of the highest state court on direct appeal. Bronaugh v. Ohio, 235 F.3d 280, 283 (6th Cir. 2000). In this case, the Tennessee Supreme Court denied permission to appeal the decision of the Tennessee Court of Criminal Appeals on direct appeal on December 15, 2003, and the time for filing a petition for a writ of certiorari expired 90 days later, on March 15, 2004.[6] This petition was filed on July 7, 2005, more than three months after the expiration of the one-year limitations period,[7] and it is clearly time-barred.[8]

The one-year limitations period applicable to § 2254 motions is subject to equitable tolling. Griffin v. Rogers, 308 F.3d 647, 652-53 (6th Cir. 2002); see also Dunlap v. United States, 250 F.3d 1001, 1004 (6th Cir. 2001) (equitable tolling also applies to § 2255 motions). Five factors are relevant to determining the appropriateness of equitably tolling a statute of limitations:

---

[6] Because the ninetieth day fell on Sunday, March 14, 2004, Webb had until the next day to file a timely petition. Sup. Ct. R. 30.1.

[7] The running of the limitations period was not tolled for the period during which Webb's first federal habeas petition was pending in this district, because the plain language of 28 U.S.C. § 2244(d)(2) is limited to state postconviction petitions and applications for other collateral review that are filed in state court. Duncan v. Walker, 533 U.S. 167 (2001).

[8] Section 2244(d)(1) provides that the limitations period begins to run from the latest of the four specified circumstances. In this case, with the exception of the eighth claim, concerning newly discovered evidence, an examination of Webb's petition reveals no basis for concluding that the limitations period commenced at any time later than the date on which her conviction became final. The eighth claim arguably falls within § 2244(d)(4), which provides that the limitations period with respect to newly discovered evidence begins to run on the date on which that evidence could have been discovered through the exercise of due diligence. Although the petition provides no information concerning when Webb actually discovered this new evidence, let alone the date on which she could have discovered it through the exercise of due diligence, the Court notes that the identical claim was asserted in Webb's first habeas petition, which was filed on February 13, 2004. As more than one year has elapsed since that petition was filed, it necessarily follows that the one-year limitations period has expired with respect to the eighth claim.

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

Dunlap, 250 F.3d at 1008.[9]

The Sixth Circuit has stated that "equitable tolling relief should be granted only sparingly." Amini, 259 F.3d at 500; see also Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003); Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003).

> Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. . . . Absent compelling equitable considerations, a court should not extend limitations by even a single day.

Graham-Humphreys v. Memphis Brooks Museum, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000); see also King v. United States, 63 Fed. Appx. 793, 795 (6th Cir. Mar. 27, 2003); Johnson v. U.S. Postal Serv., No. 86-2189, 1988 WL 122962 (6th Cir. Nov. 16, 1988) (refusing to apply equitable tolling when *pro se* litigant missed filing deadline by one day). Thus, ignorance of the law by *pro se* litigants does not toll the limitations period. Price v. Jamrog, 79 Fed. Appx. 110, 112 (6th Cir. Oct. 23, 2003); Harrison v. I.M.S., 56 Fed. Appx. 682, 685-86 (6th Cir. Jan. 22, 2003); Miller v. Cason, 49 Fed. Appx. 495, 497 (6th Cir. Sept. 27, 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petition."); Brown v. United States, 20 Fed. Appx. 373, 374 (6th Cir. Sept.

---

[9] This five-factor standard is identical to the test used to determine whether equitable tolling is appropriate in other contexts, including employment discrimination cases. Amini v. Oberlin College, 259 F.3d 493, 500 (6th Cir. 2001) (citing Dunlap); Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998).

21, 2001) ("Ignorance of the limitations period does not toll the limitations period."); cf. Jurado, 337 F.3d at 644-45 (lawyer's mistake is not a proper basis for equitable tolling).[10]

Webb cannot satisfy her burden of demonstrating that equitable tolling would be appropriate in this case. The petition was filed almost precisely one year after the dismissal of her previous petition, and it contains no explanation for the dilatory filing. For the reasons previously stated, Webb's apparent ignorance of the law provides no basis for tolling of the limitations period.

Accordingly, the Court DISMISSES the petition, in its entirety, both for lack of subject-matter jurisdiction, and as time-barred.

## IV.   APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability ("COA"). The statute provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the

---

[10] See also Cobas v. Burgess, 306 F.3d 441 (6th Cir. 2002) ("Since a petitioner does not have a right to assistance of counsel on a habeas appeal . . . , and because an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations . . . , we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner.").

10

>   applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2254 petitioner may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus:

> A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. ... We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA: "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[11]

In this case, there can be no question that the "in custody" requirement is not satisfied and that this petition is time-barred. Therefore, any appeal by this petitioner on any of the issues raised in this petition does not deserve attention. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2254 petitions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a habeas case, and thereby avoid the $255 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper

---

[11] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

12

status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal *in forma pauperis* is DENIED. Accordingly, if petitioner files a notice of appeal, she must also pay the full $255 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.

IT IS SO ORDERED this 10th day of November, 2005.

JAMES D. TODD
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 9 in case 1:05-CV-01186 was distributed by fax, mail, or direct printing on November 14, 2005 to the parties listed.

---

Tabitha N. Webb
PO Box 1451
Jackson, TN 38302

Honorable James Todd
US DISTRICT COURT